[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14974
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-00441-WMR-RGV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ROQUE OCHOA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 15, 2020)

Before LAGOA, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Miguel Roque Ochoa appeals his below-guidelines 240-month sentence imposed after he pled guilty to one count of conspiracy to possess with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and two counts of possession with intent to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. § 841(a), (b)(1)(A), 18 U.S.C. § 2. Ochoa asserts the district court erred in applying a four-level enhancement for his role in the offenses and in denying him safety valve relief. No reversible error has been shown, and we affirm.

## I.  DISCUSSION

*A.  Leadership Enhancement*

Ochoa contends the district court erred in imposing a four-level leadership role enhancement for leading criminal activities that involved five or more participants. Ochoa asserts the Government failed to meet its burden to establish by a preponderance of the evidence that there were five or more participants. He also asserts the case agent's testimony used to support the enhancement was insufficiently reliable. Lastly, Ochoa contends the facts relied on by the district court do not support the application of the enhancement.

*1.  Five or more participants*

We review the district court's conclusion the scheme involved five or more participants for plain error because Ochoa did not object to the number of

2

participants either in the presentence report (PSR) addendum or at sentencing. *See*

*United States v. McNair*, 605 F.3d 1152, 1222 (11th Cir. 2010) (explaining if the

party did not raise the same argument before the district court, we review the issue

for plain error). While Ochoa argues this finding should be reviewed under a

preserved standard of error because "the district court and the [G]overnment

plainly understood" that he "was objecting to the application of the

enhancement[,]" in the PSR addendum he only objected to the characterization of

himself as a leader in the scheme and at sentencing argued that he was not a leader

and objected to contrary characterizations. These generalized objections and

arguments against the application of the leadership enhancement, premised on his

contention that he was a mere courier in the scheme, were not specific or clear

enough to apprise the court and Government that relief would later be sought based

upon whether five or more participants were involved, because the arguments and

objections were based upon his role in the conspiracy, not the number of

participants in it. *See United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir.

2007) (explaining to preserve an issue for appeal, one must raise an objection that

is sufficient to apprise the trial court and the opposing party of the particular

grounds upon which appellate relief will later be sought).

Under § 3B1.1(a), a four-level enhancement applies if (1) the defendant was

an organizer or leader of a criminal activity; and (2) the criminal activity involved

3

five or more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a). Under the Guidelines, a "participant" is defined as a "person who is criminally responsible for the commission of the offense but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1). To be criminally responsible as a participant in a conspiracy, there must be "(1) an agreement between two or more persons to commit a crime, and (2) the . . . knowing and voluntary participation in the conspiracy." *United States v. Ohayon*, 483 F.3d 1281, 1292 (11th Cir. 2007). A district court determines the number of participants by tallying the number of individuals involved in the relevant conduct for which the defendant was responsible, including the events surrounding the criminal act. *United States v. Holland*, 22 F.3d 1040, 1045-46 (11th Cir. 1994). The defendant himself is counted in the calculation. *Id.* at 1045.

The district court did not plainly err in concluding there were at least five participants in the scheme. *See United States v. Olano*, 507 U.S. 725, 732-34 (1993) (stating plain error occurs when there is (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings). Substantial evidence showed that at least five individuals—Ochoa, Cesar Alaniz Ramirez, Ernesto Daniel Ortuno Hernandez, Areli Perez Hernandez, and Alfredo Solorio—were were criminally responsible for the conspiracy because they knowingly and

voluntarily participated in the scheme which involved more than two individuals agreeing to commit a crime. Ochoa both pled guilty to conspiring with Alaniz, Ortuno, Perez, and Solorio, and said during his plea hearing that the conspiracy involved four or five people.

Undisputed facts in the PSR also support the finding that five or more participants were involved. *See United States v. Beckles*, 565 F.3d 832, 843-44 (11th Cir. 2009) (stating the district court may base its factual findings on undisputed facts in the PSR and that facts in the PSR are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity). Ochoa did not object to several paragraphs in the PSR that establish facts supporting the district court's finding. The PSR established that Alaniz and Ochoa communicated regarding plans for Alaniz to pick up 60 kilograms of cocaine, with 20 kilograms to be supplied to Perez and the remaining to be distributed by Ochoa through couriers to customers around Atlanta. The PSR also established that intercepted communications occurred between Solorio and Ochoa where Solorio asked Ochoa for 2 kilograms of cocaine. The PSR showed that Ochoa told Solorio he was set to receive 15 kilograms of cocaine and they arranged a one-kilogram sale. Additionally, the PSR established Ochoa instructed Ortuno to deliver 20 kilograms of cocaine to an unidentified customer. Even without the additional evidence presented at sentencing, these undisputed facts

5

from the PSR and guilty plea made it reasonable for the court to conclude there were five participants in the conspiracy.  Since Ochoa did not establish that the court erred in reaching that conclusion, he cannot show plain error.

## 2.  *Case Agent Testimony*

We review Ochoa's due process argument and the district court's decision to consider the agent's testimony at sentencing for plain error because he never objected to the agent's reliability or competence as a witness nor argued the testimony violated his due process rights.  The only objections he made to the agent's testimony were to (1) the title of a document within the binder that contained the call logs, specifying that he only objected to the characterization of his role in the scheme, and (2) a question posed by the Government that "characterize[d] the transcript . . . ."  And when specifically asked at the conclusion of the sentencing hearing—after the court had found the agent's testimony credible and appropriate to consider—if he had any objections, he said he did not.[1]  None of his objections at sentencing apprised the court and Government that he would later seek appellate relief based on an alleged due

---

[1]  We reject Ochoa's argument that the district court did not comply with *United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990), *overruled on other grounds, United States v. Morrill*, 984 F.2d 1136, 1137 (11th Cir. 1993), in soliciting objections after imposing Ochoa's sentence.

process violation, therefore the standard of review is for plain error. *See Straub*, 508 F.3d at 1011.

The sentencing court may consider any reliably sufficient information. *See* U.S.S.G. § 6A1.3(a). It is not restricted to considering evidence that would have been admissible at trial. *United States v. Christopher*, 923 F.2d 1545, 1555 (11th Cir. 1991). Specifically, "[a] sentencing court may consider any evidence . . . in determining whether factors exist that would enhance a . . . sentence, provided that (1) the evidence has sufficient indicia of reliability, (2) the court makes explicit findings of fact as to credibility, and (3) the defendant has an opportunity to rebut the evidence." *United States v. Hernandez*, 906 F.3d 1367, 1369 (11th Cir. 2018). A defendant has a due process right not to be sentenced based on false or unreliable information. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). To prevail on an unreliable evidence sentencing challenge, a defendant must show "(1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis of the sentence." *Id.*

The district court did not plainly err in considering the agent's testimony. Ochoa does not dispute the accuracy of the agent's testimony nor the summaries of the intercepted calls, rather, he disputes the characterization of what the information meant. The district court expressly found the agent's testimony credible and Ochoa has not pointed to evidence on the record to show the

7

testimony was false.  Under the Federal Rules of Evidence, the agent could have explained and decoded the criminal communications at trial because she was qualified and experienced due to her eight years of work with the Drug Enforcement Agency.  *See United States v. Delva*, 922 F.3d 1228, 1251-52 (11th Cir. 2019) (stating it is well established under the federal evidence rules that qualified and experienced law enforcement agents can testify to decode criminal communications and operations).  As this was a sentencing proceeding where the court was not bound by the rules of evidence and this testimony would have been admissible at trial where the rules of evidence do apply, the testimony was admissible at sentencing where admission standards are relaxed.

### 3.  Application of the Enhancement

A defendant's role as an organizer or leader is a factual finding that we review for clear error to determine if the enhancement was applied appropriately. *United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015).  Review for clear error is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed.  *Id.*

Factors to consider in determining whether one was an organizer or manager include:  (1) the exercise of decision-making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of

8

participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4); *see United States v. Caraballo*, 595 F.3d 1214, 1231 (11th Cir. 2010). Evidence that the defendant recruited and instructed participants in the conspiracy is sufficient to support a leadership enhancement. *Id.*

The district court did not clearly err in determining that Ochoa played a leadership role in the conspiracy because undisputed facts from the PSR and his affidavit showed he directed the drug distribution and that he recruited two individuals to participate in the scheme. First, undisputed facts from the PSR showed that Ochoa directed and coordinated the drug distribution. Second, in his affidavit, Ochoa admitted that he recruited two individuals to deliver drugs for the conspiracy. These undisputed facts—that he recruited individuals to the scheme and instructed their activities—were sufficient for the court to conclude he played a leadership role in the offense. *See Caraballo*, 595 F.3d at 1231. Accordingly, we affirm the district court's application of the four-level leadership role enhancement.

B. *Safety Valve*

We review a district court's factual findings and subsequent denial of safety valve relief for clear error. *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). The application of safety valve relief requires, in part, that by the time of

9

sentencing, the defendant must truthfully and completely provide the government with all information the defendant has concerning the offense and that the defendant was not a leader in the offense. 18 U.S.C. § 3553(f)(4), (5); U.S.S.G. § 5C1.2(a)(4), (5).

To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect. *United States v. Maher*, 955 F.3d 880, 885 (11th Cir. 2020) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014)). "When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Sapuppo*, 739 F.3d at 680.

The district court did not clearly err in denying Ochoa relief under the safety valve provision because: (1) as discussed above, he played a leadership role in the conspiracy, and was thus ineligible for safety valve relief and (2) the district court found that his affidavit was not genuine, an alternative ground upon which we can affirm the district court's ruling that he did not address on appeal, and thus he has abandoned any challenge of that ground. Accordingly, we affirm the district court's denial of his request for safety valve relief.

## II.  CONCLUSION

The district court did not err in applying a four-level enhancement for Ochoa's role in the offense or in denying him safety valve relief.  Accordingly, we affirm Ochoa's sentence.

**AFFIRMED.**